IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

```
IN RE:                            )
GLOBE BUILDING MATERIALS, INC.)

GORDON E. GOUVEIA, Chapter 7      )
Trustee of Globe Building         )
Materials, Inc.,                  )
                                  )
Plaintiff-Appellee,               )
                                  )
vs.                               )   NO. 2:04-CV-481
                                  )   Adv. Pro. No. 03-6082
STATE OF WISCONSIN, et al.,       )   (Case No. 01-60182)
                                  )
Defendants-Appellants.            )
```

## OPINION AND ORDER

This matter is before the Court on an appeal from the United States Bankruptcy Court for the Northern District of Indiana's September 14, 2004 order, filed by Defendants/Appellants, the State of Wisconsin and Peggy A. Lautenschlager, in her capacity as Attorney General of the State of Wisconsin.  For the reasons set forth below, the September 14, 2004, order of the bankruptcy court is **AFFIRMED.**

BACKGROUND

The factual background is undisputed.  On January 19, 2001, Globe Building Materials, Inc. (hereinafter "Globe" or "the Debtor"), filed a voluntary petition for relief under Chapter 11 of the Bankruptcy

Code.  (Joint Stip. ¶ 1.)  Globe's business consisted of the manufacture, sale and distribution of residential roofing materials. (Joint Stip. ¶ 7.) Globe's case was converted to a Chapter 7 case on April 4, 2001.  (Joint Stip. ¶ 2.)  Gordon E. Gouveia was appointed the Chapter 7 Trustee of Globe (hereinafter "the Trustee"), and he continues to act as the Chapter 7 Trustee for the Debtor's estate. (Joint Stip. ¶ 2.)

On or about July 24, 2001, the State of Wisconsin (hereinafter "the State") filed a proof of claim in this case asserting a secured wage claim against Globe's estate in connection with the lien that is the subject of the Trustee's action for avoidance under Section 545(2).  (Joint Stip. ¶ 8.)  On or about July 24, 2001, the State filed a Notice of Lien with the State of Wisconsin Department of Financial Institutions (the "Department") and the Office of the Chippewa Wisconsin County Clerk.  (Joint Stip. ¶ 8.)  In the Notice of Lien, the State asserted a wage lien pursuant to Wisconsin Statute section 109.09(2) against all real and personal property then owned or thereafter acquired by Globe in the State of Wisconsin.  (Joint Stip. ¶ 8.)  Through the filing of the Notice of Lien, the State asserted its statutory lien against all of Globe's property that was located in Wisconsin.  (Joint Stip. ¶ 9.)

On or about February 22, 2002, the bankruptcy court approved the Trustee's sale of one of Globe's manufacturing facilities.  (Joint Stip. ¶ 10.)  The net proceeds of the sale were paid to the Trustee,

-2-

and on the basis of its asserted statutory lien, the State asserted a first priority lien on the net sale proceeds. (Joint Stip. ¶ 10.) On January 17, 2003, the Trustee commenced this adversary proceeding in an effort to set aside the wage lien.

This is an appeal from a judgment of the United States Bankruptcy Court for the Northern District of Indiana, issued by the Honorable J. Philip Klingeberger, on September 14, 2005 (hereinafter "bankruptcy order"). The bankruptcy court found that there was no genuine issue as to any material fact, and that the Trustee was entitled to summary judgment as a matter of law, ruling that the statutory lien asserted by the State pursuant to Wisconsin Statute section 109.09 is determined to be avoided by the Trustee pursuant to 11 U.S.C. section 545(2).

All parties agree that this appeal boils down to a discrete legal dispute over whether the State's statutory wage lien can be avoided by the Trustee under 11 U.S.C. section 545(2) of the Bankruptcy Code.

DISCUSSION

In reviewing a bankruptcy court's decision pursuant to 28 U.S.C. section 158(a), the district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. Fed. R. Bankr. P. 8013. Appellate courts apply the same standards of review in examining bankruptcy court decisions that govern appeals in other cases. *See Smoker v. Hill & Assocs., Inc.,*

204 B.R. 966, 971 (N.D. Ind. 1997). Accordingly, this Court reviews the bankruptcy court's conclusions of law de novo, *id.*, and the bankruptcy court's findings of fact under the clearly erroneous standard. Fed. R. Bankr. P. 8013; *see also In re Lefkas General Partners*, 112 F.3d 896, 900 (7th Cir. 1997).

The State raises one issue on appeal: "whether or not the State's statutory wage lien can be avoided under [section] 545(2) of the Bankruptcy Code, 11 U.S.C. [section] 545(2)." (Appellants' Br., p. 2.) In support of its argument that the Trustee can avoid the wage lien using his power as a "hypothetical bona fide purchaser" under section 545(2), the State urges that the Seventh Circuit's decision in *In re AR Accessories Group, Inc.*, 345 F.3d 454 (7th Cir. 2003), is controlling. The bankruptcy court disagreed, and, following a thorough analysis of the factual and legal issues presented in *AR Accessories*, found that the issue of avoidance had not been determined.

In *AR Accessories*, the Seventh Circuit ruled that a Wisconsin statutory lien (arising under the same Wisconsin statute as the lien in this case, section 109.09(2)), did not violate the automatic stay and was enforceable against the trustee, even though the statute did not contain language expressly providing for retroactive perfection of the lien interest. In that case, the debtor filed for bankruptcy and its assets were liquidated. Three months after the filing, the Wisconsin Department of Workforce Development filed a petition in

-4-

state court for a wage earner's lien pursuant to Wisconsin Statute section 109.09(2) on behalf of the debtor's former employees who sought unpaid vacation and severance pay.  The debtor's liquidating trustee and its bank, which held a security interest in its assets, commenced an adversary proceeding alleging the Department's actions violated the stay.  The debtor claimed that the wage lien was void *ab initio* because it was created after the debtor had filed its petition for bankruptcy.  *AR Accessories*, 345 F.3d at 456.  The Department argued that the wage lien fit within the automatic stay exception of section 362(b)(3), and was effective against the debtor and bank under section 546(b)(1)(A).  *Id.*  After analyzing whether section 546(b)(1)(A) required the Wisconsin statute to provide expressly for retroactive perfection of the lien interest, the Court held "that a priming statute need not contain language expressly providing for retroactive perfection in order to trigger the exception provided in 11 U.S.C. [section] 546(b)(1)(A) to the automatic stay of postpetition efforts to perfect a property interest."  *Id.* at 458.  Thus, the Court found that the Wisconsin statute fit within the automatic stay exception, and the lien was valid.[1]

---

[1] In this case, the Trustee also originally argued that because the lien filing was made postpetition, the automatic stay was violated and the wage lien was void.  However, the Trustee now concedes *AR Accessories* already rejected that argument.  Therefore, the Trustee only advances one argument in this appeal – that the Trustee can avoid the wage lien using his power as a hypothetical "bona fide purchaser" under section 545(2) of the Bankruptcy Code.

The Seventh Circuit in *AR Accessories* also rejected an alternative argument, that the Department held no prepetition lien interest, as required by section 546(b)(1)(A), because it had no interest in the unpaid wages prior to the filing of the bankruptcy petition.  *Id.* at 458-59.  The Seventh Circuit agreed with the bankruptcy court that the lien interest under the Wisconsin statute was created when the last services were performed for which the wages were unpaid and owing (not when the Department filed and served notice of the lien petition on the debtor).  *Id.* at 459.  The Seventh Circuit found that once an employee provides services to an employer, he is entitled to wages.  *Id.*  The wage lien is just a mechanism for the Department's enforcement of a preexisting right on behalf of the employee, and the filing of the lien petition merely puts the employer and others on notice of the existence of a claim to the employer's property in exchange for unpaid services - it does not create any new interest under section 546(b).  *Id.* at 459 n.4.

The bankruptcy court found that nothing in *AR Accessories* touched upon the viability of the wage lien in the face of the exercise of a trustee's avoidance power under section 545(2). This Court agrees with the bankruptcy court that in *AR Accessories*, the debtor solely claimed that the wage lien was void because it violated the automatic stay. That debtor never asserted that the wage lien could have been avoided under either section 544 or 545.  Furthermore, the Seventh Circuit did not address any avoidance issues.

The State concedes that *AR Accessories* did not specifically involve section 545(2); however, it argues that section 545(2) is clearly affected by the holding of the case. The State contends that once the Seventh Circuit decided the wage lien statute met the requirements of section 546(b)(1)(A), the Trustee's powers under sections 544, 545, and 549 became "subject to" the wage lien statute. Specifically, section 546(b)(1)(A) provides that:

> (b)(1)   The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any applicable law that - -
> (A)   permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection[.]

11 U.S.C. § 546(b)(1)(A). The State claims that because *AR Accessories* determined that the wage lien statute fits the exception to the automatic stay, the Trustee's rights and powers under all three sections (544, 545, and 549), must be curtailed. However, the State provides no case law or authority in support of this argument. There is simply no support for the State's argument that the mere existence of the Wisconsin statute automatically strips the Trustee of his section 545(2) avoidance powers with regard to the Trustee's bona fide purchaser status, just because the Trustee's avoidance powers are "subject to any generally applicable law" under section 546(b)(1)(A).

The bankruptcy court found that:

> there is no recitation of which of the "rights

-7-

>and powers under sections 544, 545, and 549 of this title are subject to [the wage lien as a] generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquired rights in such property before the date of perfection, as must be determined in order for 11 U.S.C. [section] 546(b)(1)(A)to provide the predicate necessary for the application of 11 U.S.C. [section] 362(b)(3). As phrased by the parties and addressed by the Court of Appeals, the sole issue determined in *AR Accessories* is that the Wisconsin wage lien statute permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection, and that Wisconsin's act of perfecting its lien post-petition did not violate the automatic stay by operation of [section] 362(b)(3)/[section] 546(b)(1)(A). This result hinged on relating the lien back to a prepetition point, which the Court accomplished by construing the statute to not require an express relation-back provision to give the lien a retroactive effect under applicable law.

(Bankr. Order at 8-9.)  The bankruptcy court went on to hypothesize that *AR Accessories* assumed the retroactive perfection would cause the wage lien to trump some of the Trustee's avoidance powers, but not necessarily all.  (Bankr. Order at 9.)

The bankruptcy court then considered the language of the Wisconsin statute, and determined which avoiding powers in section 546(b)(1) the statute actually affected.  Wisconsin Statute section 109.09(3)(c) provides that:

>A lien under par. (a) takes precedence over all other debts, judgments, decrees, liens or mortgages against the employer, except a lien of a financial institution . . . .

-8-

Wis. Stat. § 109.09(3)(c). Thus, the bankruptcy court concluded that the wage lien statute provided that the rights of a creditor holding a judicial lien (section 544(a)(1)), and the rights of a creditor holding an unsatisfied execution (section 544(a)(2)), are subordinate to the statutory wage lien even if the rights of those creditors arose before the lien took effect. (Bankr. Order at 9-10.)

The bankruptcy court noted that in order to fall within the exception of section 362(b)(3) (the automatic stay), it is not necessary that every power of a trustee under sections 544, 545, and 549 be subject to defeat by the interest sought to be made subject to section 362(b)(3). (*Id.*) The bankruptcy court found that *AR Accessories* indicates that "[i]f the act of perfection will "trump" **even one** of a trustee's avoiding powers, it does not violate the automatic stay to undertake the actions necessary for perfection." (Bankr. Order at 10 (emphasis in original)).

This Court agrees with the bankruptcy court's finding that *AR Accessories* did not address the question of whether the application of the wage lien statute would actually affect the priority of a trustee's hypothetical bona fide purchaser status and corresponding powers under section 545(2). Moreover, this Court agrees that the language in section 546(b)(1)(A) does not require that all of the Trustee's powers under sections 544, 545, and 549 be subordinate just because one is trumped. Rather, because "[t]he rights and powers of a trustee under sections 544, 545, and 549 of this title are **subject**

-9-

**to any generally applicable law**," the next proper step, as the bankruptcy court undertook, is to analyze whether the trustee's avoidance power as a hypothetical bona fide purchaser under section 545(2) is indeed affected by the wage lien statute.

Before turning to the analysis of the wage lien statute under state law, the Court notes that the State contends that whether the wage lien can defeat the rights of a hypothetical bona fide purchaser is not relevant to the only issue before this Court, arguing repeatedly that if the wage lien statute fits the requirements of section 546(b)(1)(A), then the Trustee's avoiding powers, including those as a hypothetical bona fide purchaser, must become "subject to" the wage lien. In contrast, the Trustee interprets "subject to" to mean that the Court must look at the wage lien statute to decide whether or not the lien it creates can defeat the rights of a hypothetical bona fide purchaser. It is the second interpretation that the bankruptcy court adopted, and that this Court adopts as well. The State cites the following legislative history to section 545:

> If a transferee is able to perfect under section 546(a) [section 546(b) as enacted] and that perfection relates back to an earlier date, then in spite of the filing of the bankruptcy petition, the trustee would not be able to defeat the lien, because the lien would be perfected and enforceable against a bona fide purchaser that purchased the property on the date of the filing of the petition.

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 371 (1977); S.R. Rep. No. 95-989, 95th Cong., 2d Sess. 85-86 (1978). But the State fails to

acknowledge that Wisconsin Statute 109.09 does not expressly provide for retroactive perfection, nor does it provide that the lien would be enforceable against a bona fide purchaser.  Rather, it simply provides that the lien takes effect when the Department files a notice of the lien, and that lien "takes precedence over all other debts, judgments, decrees, liens or mortgages against the employer . . . ." Wis. Stat. § 109.09(2), (3)(c).  Moreover, *AR Accessories* simply found that, as a priming statute, the wage lien statute did not have to contain language expressly providing for retroactive perfection for sections 546(b) and 362(b)(3) to apply - the statute giving superpriority status to wage earners' liens fit within the exception to the automatic stay.  Aside from recognizing that the wage lien is created when the last services are performed prior to the filing of the bankruptcy petition, but can be perfected postpetition, that case did not explicitly address perfection under the parameters of the Wisconsin statute, or how the statutory lien interacts with the power of a bankruptcy trustee to avoid statutory liens under section 545(2).

Section 545(2) permits the Trustee to avoid any statutory lien on the Debtor's property to the extent that it "is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of commencement of the case, whether or not such a purchaser exists." 11 U.S.C. § 545(2).  The Trustee's avoidance power is tempered by section 546(b)(1)(A), by subjecting it to "any generally applicable

-11-

law that permits perfection . . . to be effective against an entity that acquires rights in such property before the date of such perfection." 11 U.S.C. § 546(b)(1)(A).  Thus, as the Trustee points out, its power to avoid a statutory lien under section 545(2) is subject to any applicable law that permits the delayed perfection of a statutory lien.  *See* 2 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW & PRACTICE 2d ("NORTON") § 55:3 (2005).  However, if state law does not permit a statutory lien to be enforced against a bona fide purchaser, then the lien is avoidable under section 545(2).  *See In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1164 (9th Cir. 2000); *Matter of Boerne Hills Leasing Corp.,* 15 F.3d 57, 59 (5th Cir. 1994).  Aside from *AR Accessories*, which this Court has already found to be not controlling in this case, the State does not cite to any relevant case law that establishes the Wisconsin statute at issue should be enforced against a bona fide purchaser.

In this case, it is proper to look to Wisconsin law to determine whether the trustee's status as a hypothetical bona fide purchaser (under section 545(2)), can defeat this statutory lien in question. *Matter of Phillips Constr. Co.*, 579 F.2d 432, 432 (7th Cir. 1978) (holding that whether a lien is enforceable against a bona fide purchaser is determined under state law).  Wisconsin Statute section 109.09 provides priority for the wage lien over "all other debts, judgments, decrees, liens or mortgages against the employer, except a lien of a financial institution . . . ."  However, it does not

specifically denote whether the wage lien would have priority over a hypothetical bona fide purchaser.

This Court agrees with the Trustee that the following procedure should be followed:

> In applying Code § 546 to a statutory lien, a two step analysis is appropriate. First, is the statutory lien protected under nonbankruptcy law against both a bona fide purchaser under Code § 545 and a judgment lien creditor under Code § 544 arising as of the date of the filing of the bankruptcy petition? If the answer is "yes," the analysis need proceed no further. Unless avoided as a disguised priority or a landlord's lien under Code § 545, the statutory lien is valid in bankruptcy . . . . If the answer to . . . this first question is "no," then a second question must be asked. Under applicable nonbankruptcy law, does there remain a procedure by which the statutory lien claimant can still perfect the lien as against judgment lien creditors and bona fide purchasers whose interest arose as of the date of bankruptcy? If such a procedure exists and applies to the type of claimant against whom the statutory lien was not previously protected, the holder of the statutory lien may still protect his interest.

NORTON, § 55:3.

The bankruptcy court correctly determined that a bona fide purchaser's interest is not subordinate to the Wisconsin wage earner's lien. Under the principle of *expressio unius est exclusio alterius*, the bankruptcy court reasoned that because the lien delineates the types of interest which are subordinate to the lien, but does not designate a bona fide purchaser as being subordinate, logically, a bona fide purchaser's interest is not subordinate to the wage lien. (Bankr. Order at 12.)

The bankruptcy court also looked to the history of the statute, which, as the bankruptcy court noted, has been subjected to "constant tinkering," and case law in determining whether a bona fide purchaser's interest is subordinate to the wage lien. *In re Napco Graphic Arts, Inc.*, 83 B.R. 558 (E.D. Wis. 1988), found that the wage lien was subordinate to liens of secured creditors that arose and were perfected prior to the date the wage lien arose. The Wisconsin Court of Appeals held in 1998 that the wage lien was entitled to superpriority status. *See Pfister v. Milwaukee Economic Develop. Corp.*, 576 N.W. 2d 554, 556 (Wis. Ct. App. 1998) (holding the lien "has priority over all other liens (except those explicitly excluded by statute), including pre-existing ones."). As noted by the bankruptcy court, approximately six months later, the Wisconsin legislature amended section 109.09(2) to override the superpriority status, but then in 1999, the law was amended again to reestablish the superpriority status of the wage lien over other interests designated in the statute, with the exception of a carve out priority for certain liens of financial institutions. During the re-working of the statute, the legislature could have included the class of bona fide purchasers as a designated category of property interest holders subject to the statute, but it did not.

Thus, this Court agrees with the conclusion of the bankruptcy court - that Wisconsin Statute section 109.09 establishes that a bona fide purchaser's interest, who attains his interest before the

-14-

recording of the wage lien (like the Trustee in this case), is not subordinate to the wage lien.  Notwithstanding the post-bankruptcy perfection of the wage lien, its superpriority status does not extend so far as to defeat the rights of an intervening hypothetical bona fide purchaser under applicable Wisconsin law.

Accordingly, this Court **AFFIRMS** the bankruptcy court's September 14, 2004, judgment.

CONCLUSION

For the reasons set forth above, the September 14, 2004, order of the bankruptcy court is **AFFIRMED**.

DATED:  August 9, 2005                S/RUDY LOZANO, Judge
                                      **United States District Court**